# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOWLIN SAEPHARN, | 1:07-CV-00249 OWW SMS HC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| JOHN MARSHALL, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Sacramento, following his conviction on March 28, 1985, by guilty plea to two counts of second degree murder in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. The allegation that Petitioner had used a deadly weapon during commission of the offense was found to be true. Id. On April 25, 1985, he was sentenced to serve an indeterminate term of 16 years to life with the possibility of parole. Id. His minimum eligible parole date was September

1

27, 1994. See Answer, Exhibit 2 at 2.

On April 25, 2006, a subsequent parole suitability hearing was held before the California Board of Parole Hearings (hereinafter "Board"). Id. Petitioner participated in the hearing and was represented by counsel. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for two years. Id. at 58.

Petitioner then sought relief in the state courts. He filed a petition for writ of habeas corpus in the Sacramento County Superior Court. See Answer, Exhibit 6. The superior court denied the petition on October 11, 2006, in a reasoned decision. Id. He then filed a habeas petition in the California Court of Appeal, Third Appellate District. See Answer, Exhibit 7. The petition was summarily denied on November 9, 2006. Id. On November 20, 2006, Petitioner filed a petition for review in the California Supreme Court. See Answer, Exhibit 8. The petition was denied without comment on January 24, 2007. Id.

Petitioner filed a petition for writ of habeas corpus in this Court on February 16, 2007. On July 13, 2007, he filed a first amended petition challenging the 2006 decision of the Board denying parole. He contends he was denied his due process rights when the Board arbitrarily, capriciously, and without any evidentiary support, deemed Petitioner posed an unreasonable risk of danger to the public when all relevant and reliable evidence showed he posed no risk if released. Respondent filed an answer to the petition on October 11, 2007, and Petitioner filed a traverse on November 1, 2007.

## FACTUAL BACKGROUND[1]

On January 31, 1985, officers of the Sacramento Police Department responded to 2940 38th Street in Sacramento, regarding the homicide of a 15 year old girl. They were informed that Petitioner had spent the night there with his pregnant girlfriend, the victim. They were told Petitioner had fled after stabbing her that morning during an argument. The victim's parents told police that their daughter had awakened them by knocking on their bedroom door and saying that Petitioner had killed her. Shortly thereafter, she died.

---

[1] The factual summary is derived from the factual summary set forth in the probation officer's report. See Answer, Exhibit 3.

At 2:00 p.m. that day, Petitioner called a family friend and told him he had killed the victim and was going to the river to commit suicide by hanging himself. Officers subsequently located him walking on the levee and apprehended him, whereupon he admitted the offense. He had reddish marks around his neck, very similar to rope burns, but denied any attempt to hang himself, stating the marks were caused by his jacket. The victim's mother told police Petitioner had choked the victim during an argument two days before the offense, during an argument over laundry, and that later that day, they had another argument over an accusation that Petitioner had pulled out hair from the head of the victim's 14 month old child. She also reported that Petitioner had beaten the victim on many occasions, though not in front of the family.

The autopsy revealed that the victim died of a stab wound to the right chest and lung. Also, her viable fetus, which was of 27 to 30 weeks gestation, died in utero due to maternal demise.

## DISCUSSION

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a

3

state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its

independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

As noted above, Petitioner's claims were presented in a petition for writ of habeas corpus to the Sacramento County Superior Court. See Answer, Exhibit 6. The superior court denied the claims in a reasoned opinion. Id. Petitioner then presented his claims to the appellate court and to the California Supreme Court. Both petitions were summarily denied. See Answer, Exhibits 7-8. The California Supreme Court, by its "silent order" denying review of the superior court's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the superior court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

II.      Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,

the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is guaranteed the following process: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id. It is clear from the record these three guarantees were given. Petitioner received notice of the hearing, he was heard at the hearing and he was told why he did not qualify for parole.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of *good time* does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added). The Ninth Circuit has held that this same standard also extends to parole determinations. Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted

6

offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it has set forth in the California Code of Regulations.

To determine whether 'some evidence' supports the state court decision, the test is not whether some evidence supports the reasons cited for denying parole, "but whether some evidence indicates a parolee's release unreasonably endangers public safety." In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

In denying parole in this case, the Board based its decision on the following factors: 1) The nature and gravity of the commitment offense; 2) Petitioner's lack of remorse and further need for self-help programming; and 3) His refusal to participate in the most recent psychiatric evaluation. See Answer, Exhibit 2 at 55-61. Petitioner argues the Board's determination was arbitrary, capricious and based on an unreasonable determination of the facts. He further argues the Board's continued reliance on the commitment offense as a factor violates his due process rights because it is a factor which can never be changed. Nevertheless, a review of the Board's decision reveals the state court decision approving the Board's determination of unsuitability was not unreasonable.

The first factor mentioned by the Board in its decision was the commitment offense itself, and the Board determined the offense was committed in an especially heinous, atrocious and cruel manner. First, pursuant to § 2402(c)(1)(A), the Board found Petitioner had killed multiple victims. See Answer, Exhibit 2 at 55. Petitioner stabbed and killed his girlfriend which in turn killed the 7 month old fetus she was carrying. Thus, the finding is factually supported. Pursuant to § 2402(c)(1)(D), the Board also found the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. Id. As already stated, Petitioner plunged a large knife into the victim's chest and then left her to die. By doing so, Petitioner clearly evinced a callous disregard for her suffering, but especially toward the 7 month

old fetus she was carrying. The Board also found Petitioner's motive was exceptionally trivial pursuant to § 2402(c)(1)(E). The record shows Petitioner committed this murder because he was worried the victim would cause him "trouble" because he had pulled the victim's daughter's hair. Clearly, such a reason for murdering a pregnant mother can be characterized as trivial. In sum, the state court's finding that the offense was committed in an especially heinous, atrocious and cruel manner is not unreasonable.

Next, the Board determined Petitioner lacked remorse and was in need of further self-help programming. The state court found this factor was supported by the record. First, the court noted that Petitioner "lacked sincere remorse" during the hearing, he "made attempts to excuse his crime based on a sad childhood upbringing," and he "claimed no responsibility for either of his serious in-prison disciplinaries, and shifted the blame onto other persons, even though he was found guilty in those incidents." See Answer, Exhibit 6. The state court found this evidence showed there was "'some evidence' to indicate that petitioner does not yet fully comprehend and take responsibility for his criminal behaviors, and is in need of more self-help programming before being released into society." Id. In light of the record, the state court's determination was not unreasonable.

The Board also found significant the fact that Petitioner had refused to participate in the most recent psychological evaluation. The Board noted that such evaluations are very important to its parole decision-making process because the mental evaluations assist the Board in determining whether Petitioner poses an unreasonable risk of danger to society. See Answer, Exhibit 2 at 31. The Board concluded that while the lack of a current psychological evaluation is not determinative of whether Petitioner should be denied parole, it is nevertheless an important negative factor to be considered and tends to present Petitioner as an unreasonable risk of danger to society if released. Id. The state court found Petitioner's refusal to submit to a psychiatric evaluation constituted some evidence to indicate Petitioner has not yet fully comprehended and taken responsibility for his criminal behaviors, was in need of further self-help programming, and still remains a risk of danger to society. The state court's finding was not unreasonable.

The Board also considered various circumstances which tended to show suitability

1  pursuant to § 2402(d). See Answer, Exhibit 2 at 56-61. Petitioner possessed two vocations and
2  had marketable skills to offer. He had received laudatory chronos for his work. He had remained
3  disciplinary free for a substantial amount of time. He had no prior criminal history. He had
4  participated in many self-help programs. However, the Board concluded that the nature and
5  gravity of Petitioner's offense, his demonstrated lack of remorse and need for further self-help
6  programming, and his refusal to participate in a psychological evaluation were indicative of a
7  unreasonable risk of danger to the public if released. This Court cannot conclude that the state
8  court rejection of Petitioner's claim - that the Board's determination was not supported by some
9  evidence - was unreasonable.

10  Petitioner's claim that the Board improperly relied on immutable factors is without merit.
11  While it is true that in Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit
12  stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the
13  offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by
14  the prison system and could result in a due process violation," this is not the situation here. As
15  discussed above, the Board did not merely consider the underlying offense. The Board also
16  considered Petitioner's lack of remorse and his refusal to participate in a psychological
17  evaluation.

18  **RECOMMENDATION**

19  Based on the foregoing, it is HEREBY RECOMMENDED that:
20  1.  The Petition for Writ of Habeas Corpus be DENIED; and
21  2.  The Clerk of Court be DIRECTED to enter judgment for Respondent.
22  This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger,
23  United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B)
24  and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern
25  District of California. Within thirty (30) days after being served with a copy of this Findings and
26  Recommendation, any party may file written objections with the Court and serve a copy on all
27  parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and
28  Recommendation." Replies to the Objections shall be served and filed within ten (10) court days

(plus three days if served by mail) after service of the Objections. The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 15, 2008**                    /s/ Sandra M. Snyder
                                                UNITED STATES MAGISTRATE JUDGE